UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| OSCAR LEE BROWN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                        ) | 14-3003 |
| ) | |
| JOHN DOE, *et al.*           ) | |
| ) | |
| Defendants.   ) | |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently incarcerated at Sangamon County Jail, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging failure-to-protect from harm and deliberate indifference to a serious medical need.  The matter comes before this Court for ruling on the Defendants' Renewed Motion for Summary Judgment.  (Doc. 55).  The motion is granted.

## PRELIMINARY MATTERS

In its Order entered September 15, 2015, the Court denied Defendants' original motion for summary judgment because the record did not disclose that the Defendants had complied with the Court's Merit Review Opinion (Doc. 4) regarding disclosure of the

identities of the Doe defendants. On the record then presented to the Court, at least one potential defendant had not been identified, and records to that end appeared readily available. Defendants have since provided the relevant information.

Plaintiff filed a Motion for Leave to File an Amended Complaint. (Doc. 57). Leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court, however, may refuse to grant leave to amend where there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

In his proposed amended complaint, Plaintiff seeks to impose liability on several additional jail officials for the events surrounding an attack he suffered at the hands of another inmate. Specifically, Plaintiff alleges that Defendants Durr, Strayer, and Williamson failed to override his cell block assignment, that other jail officials failed to adequately respond to the attack, and that jail officials refused to get him a wheelchair when he was taken to the hospital.

For the reasons stated below, the Court finds that Plaintiff's amendment would be futile. Therefore, Plaintiff motion is denied.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was booked into the Sangamon County Jail ("jail") on January 30, 2013 after his arrest for murder and other charges. Upon arrival, Plaintiff was housed in the booking area of the jail. Jail officials asked Plaintiff a series of questions on a range of topics including mental health/medical history, gang affiliation, prior criminal history, and known enemies within the facility. (Doc. 32-1 at 1-7). According to booking records, Plaintiff denied that he was receiving care for mental health issues, denied that he had any enemies, and the officer conducting the interview noted that Plaintiff did not exhibit any visible signs of distress. Plaintiff did not have any person listed as a "keep separate from" at that time. Plaintiff was assigned to D-block on January 31, 2013. He arrived there at 6:16 p.m. (Doc. 46-2 at 1).

At 9:48 p.m., another inmate assaulted Plaintiff in Plaintiff's cell. From the time he entered D-block until the time of the assault, Plaintiff testified that he did not have any problems with any other inmates. Pl.'s Dep. 55:22-56:2. Plaintiff did not know who his assailant was prior to the attack. Id. 35:8-11. A video Defendants provided shows the assailant entering Plaintiff's cell, closing the

door, and leaving approximately 90 seconds later. The attack is not shown on video. Plaintiff remained in his cell until 9:54 p.m. A correctional officer arrives a minute later.

According to Plaintiff, his assailant's motivation was retribution as Plaintiff had been accused of killing the assailant's cousin. His assailant and the individual Plaintiff was alleged to have killed had different last names, and Plaintiff testified that he had no prior knowledge of a familial relationship between these two individuals. Pl.'s Dep. 35:4-7; 36:10-13. Plaintiff also testified that he did not know the name of his alleged victim at the time he was booked into the jail. Id. 28:23-29:2.

Plaintiff testified that his assailant was taken off the cell block shortly before the attack. Id. 45:1-8. Plaintiff has not identified the officer who did this, and he does not know where his assailant allegedly went. Records from the jail show that two officers were assigned as "rovers" in the area of the jail where Plaintiff was housed. (Doc. 46-2 at 9). Plaintiff names one of the officers (Officer Bluhm) in his amended complaint, but Plaintiff does not allege that Officer Bluhm was the guard who removed his assailant from the

cell block. Plaintiff does not make any allegations regarding the other officer.

After the assault, Plaintiff was taken to the medical unit, and later the hospital. (Doc. 58-1 at 15). Plaintiff was treated for lacerations on his face and diagnosed with an orbital fracture in his left eye.

## Analysis

Plaintiff was a pretrial detainee at the time of these events. His rights therefore arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment. See Burton v. Downey, 805 F.3d 776, 784 (7th Cir. 2015) (citing Pittman v. Cnty. of Madison, 746 F.3d 766, 775 (7th Cir. 2014)). The standards under the respective amendments are essentially the same. Id. (citing Smego v. Mitchell, 723 F.3d 752, 756 (7th Cir. 2013)).

## Failure-to-Protect

To succeed on a failure to protect claim, a plaintiff must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and, (2) prison officials acted with "deliberate indifference" to that risk. Farmer v. Brennan, 511 U.S. 825, 834

(1994). For purposes of satisfying the first prong, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Id. at 843. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A plaintiff "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996) (quoting McGill v. Duckworth, 944 F.3d 344, 349 (7th Cir. 1991)). Liability attaches where "deliberate indifference by prison officials effectively condones the attack by allowing it to happen...." Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996).

Plaintiff's main contention is that Defendants Durr, Strayer, and Williamson failed to use their authority to override his assignment to D-block. In support of this argument, Plaintiff

provides a copy of the administrative policies that grant jail officials such authority. (Doc. 58-1 at 2). The policy notwithstanding, Plaintiff has failed to point to any evidence that suggests Defendants were aware that he faced a substantial risk of harm at the time he was assigned to D-block.

Plaintiff could not have informed jail officials of a specific threat from his assailant because he did not know who his assailant was, did not know the name of his alleged victim, and had no prior knowledge of a relationship between these two individuals. If jail officials had reviewed records from Plaintiff's previous incarceration at the jail, the records would not have suggested that Plaintiff was vulnerable to an attack. Arguably, they would have suggested the contrary. (Doc. 58-1 at 23) ("[Plaintiff] lost control of his emotion[s,] started crying and throwing food trays. He stated that he could [not] stay in jail any longer and he was ready to kill someone.").

Once assigned to D-block, jail officials could be held liable if they acted with deliberate indifference towards a substantial risk of harm that developed after Plaintiff's arrival. To this end, Plaintiff speculates that jail officials told his assailant about Plaintiff's

alleged crimes after taking his assailant off the cell block, which ultimately resulted in the attack once the assailant returned. Records from the jail do not disclose that Plaintiff's assailant was transported off the cell block during the relevant time period, but Plaintiff correctly points out that the same records also do not disclose that he was taken to the medical unit. Assuming Plaintiff's assailant was removed during that time, Plaintiff does not know why his assailant was removed and he does not have personal knowledge of any conversations that took place because he was still in the cell block.

The relevant question is what information was available to the guards monitoring Plaintiff's cell block in the time period leading up to the attack. The Court can reasonably assume that Plaintiff's assailant learned about Plaintiff's alleged crimes at some point prior to the attack. The video shows Plaintiff's assailant talking on the phone before the attack. Plaintiff testified that televisions in the cell blocks could have disclosed his alleged crimes, and that inmates were also talking about it. Any of these mediums could have been the source of the information, but nothing in the record suggests that any jail official was aware of the relationship between two

individuals with different last names, none of whom were listed as Plaintiff's enemies. Plaintiff admitted that he did not have any problems with inmates prior to the attack.

Accordingly, the Court finds that no reasonable juror could conclude that jail officials failed to protect Plaintiff from harm.

## Medical Claims

Inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. Id. at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. McDonald v. Hardy, 821 F.3d 882, 888 (7th Cir. 2016) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014), and Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)).

Plaintiff was taken to the medical unit shortly after the attack. Plaintiff appears to have suffered a one-hour delay in being transported to the hospital, but, during that time, the medical records indicate that medical staff was attempting to contact one of the jail's physicians and stop Plaintiff's wounds from bleeding. In addition, Plaintiff has not shown how the one-hour delay

exacerbated his injuries.  See Williams v. Liefer, 491 F.3d 710, 714-15 (7th Cir. 2007) (a plaintiff must show that the delay, and not the underlying condition, caused harm).

Finally, Plaintiff argues that the guards who escorted him to the hospital should have provided him with a wheelchair.  Plaintiff may have preferred a wheelchair while walking into the hospital, but nothing in the medical records provided shows that a wheelchair was medically indicated at that time or that the guards otherwise obstructed Plaintiff's medical treatment.  See Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) (prisoners have no right to demand specific medical treatment).

Therefore, the Court finds that no reasonable juror could conclude that jail officials were deliberately indifferent to Plaintiff's serious medical needs.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Leave to File an Amended Complaint [57] is DENIED.**

2) **Defendants' renewed Motion for Summary Judgment [55] is GRANTED.  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their**

**own costs.  Plaintiff remains responsible for the $350.00 filing fee.**

3) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  FED. R. APP. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See FED. R. APP. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:     February 24, 2017.

FOR THE COURT:

　　　　　　　　　*s/Sue E. Myerscough*
　　　　　　　　SUE E. MYERSCOUGH
　　　　　UNITED STATES DISTRICT JUDGE